[No. A132754. First Dist., Div. Two. Aug. 15, 2012.]

VIEIRA ENTERPRISES, INC., Plaintiff and Appellant, v.
CITY OF EAST PALO ALTO et al., Defendants and Respondents.

## COUNSEL

Law Office of Lawrence R. Jensen and Lawrence R. Jensen for Plaintiff and Appellant.

Alpert, Barr & Grant, Gary L. Barr and Mark S. Blackman for California Manufactured Housing Institute as Amicus Curiae on behalf of Plaintiff and Appellant.

Burke, Williams & Sorensen, Douglas W. Dal Cielo, Amy E. Hoyt and Brian M. Affrunti for Defendants and Respondents.

## OPINION

**LAMBDEN, J.**—Vieira Enterprises, Inc. (Vieira), a seller and installer of manufactured homes, filed mechanic's liens after the owners of two lots in the City of East Palo Alto (the City) failed to pay for its delivery and installation of two manufactured homes. After the filing of the mechanic's liens, another party foreclosed on the properties and applied to the City's building services department (the City's Building Department) pursuant to

Health and Safety Code section 18551[1] for issuance of notices of installation for the two manufactured homes. The City's Building Department issued the notices of installation (the notices).

Vieira sued Hamid Pouya, the person who issued the notices, the City, and the City's Building Department (collectively, the City defendants) and claimed that the manufactured homes remained its personal property under section 18551 until the City defendants issued the notices. Vieira claimed the City defendants violated its substantive due process rights under section 1983 of title 42 of the United States Code (hereafter 42 United States Code section 1983). Vieira also set forth a cause of action for inverse condemnation against the City and the City's Building Department.

The trial court granted summary judgment in favor of the City and the City's Building Department and sustained without leave to amend Pouya's demurrer to Vieira's complaint. The trial court concluded that the common law of fixtures, not section 18551, applies and the undisputed facts established that the manufactured homes were fixtures to the real property at the time of the foreclosure and therefore Vieira's property interest in the homes had been extinguished by the time the City defendants issued the notices. We agree with the trial court and affirm the judgment.

## BACKGROUND

*The Contracts*

Vieira, an authorized dealer of Fleetwood Manufactured Homes, is in the business of selling and installing manufactured homes. In June 2005, it entered into contracts with Jeff and Maureen Wilson (collectively, the Wilsons) to install several manufactured homes on two lots owned by the Wilsons (the properties) located in the City (the contracts). Under the contracts, Vieira agreed to sell, deliver, and "install" the manufactured homes on their "foundation[s]." The contract price for the installation of each manufactured home that is the subject of this lawsuit was a little over $203,000 and a little over $202,000, respectively.[2]

The contracts between Vieira and the Wilsons provided in paragraph 2 under the title of additional terms and conditions, the following: "Parties understand that seller shall retain title to the manufactured home until payment in full of the entire purchase price whether or not possession of

---

[1] All further unspecified code sections refer to the Health and Safety Code.

[2] Vieira paid $99,066 for one of the manufactured homes and $97,884 for the other manufactured home installed on the properties.

manufactured home has been transferred to buyer. Retention of such title shall in no way relieve buyer from any obligations under the terms of this agreement, nor shall it require seller to incur any additional liability or obligation concerning the agreement for sale of the manufactured home."

Paragraph 3 in the contracts specified: "In the event of default by purchaser upon any of the terms of this agreement and without notice to buyer, seller may declare the entire unpaid balance of this agreement immediately due and payable. Seller shall be entitled to all relief granted seller by law and choice of one remedy by seller shall not be deemed a waiver by seller of any other right or remedy which it has, but all of its remedies shall be cumulative and, shall include, in addition to any other rights or remedies to which seller is entitled under law the following: (i) to immediately take possession of the manufactured home (ii) to sell the same in accordance with California law applying the proceeds of said sale as required under California law."

Paragraphs 4 and 6 in the contracts stated, respectively: "Should the security represented by the manufactured home, in fact, be impaired, seller may sue buyer for the entire unpaid balance owing from buyer to seller on the contract." "The manufactured house herein shall remain personal property and will not be placed on a foundation system, become affixed to or become any part of any real property without the express written consent of seller until payment of the entire balance as set forth in this agreement. Failure to comply with this paragraph shall constitute a breach of this agreement giving rise to all the remedies made available to the seller as herein above set forth."

*Installation of the Manufactured Homes and Vieira's Lawsuit Against the Wilsons*

Pursuant to the contracts, Vieira installed the homes on foundation systems on the properties. From July 17, 2005, until October 30, 2007, Vieira was listed in the records of the Department of Housing and Community Development (HCD) as the dealer owning the manufactured homes installed on the properties. In October 2007, once Vieira paid the manufacturer for the homes, Vieira was listed as the registered owner of the homes in the records of HCD.

The Wilsons did not pay Vieira the money owed pursuant to the contracts and, on February 6, 2006, Vieira recorded mechanic's liens on the properties. Manuel A. Vieira (Manuel), the vice-president of Vieira, stated under penalty of perjury that the homes had been installed. The mechanic's liens on the homes were for the full value of the contracts.

On April 18, 2006, Vieira filed a complaint against the Wilsons for breach of contracts and for foreclosure on the mechanic's liens.[3] Vieira alleged that it performed all work and services required by the contracts. The matter never proceeded to trial and was dismissed without prejudice.

*Foreclosure on the Properties*

After the manufactured homes had been installed on the foundations, Polo Investment Fund No. 1, LLC (Polo), issued a loan to Maureen Wilson (Maureen) on the properties and Maureen executed a deed of trust dated March 22, 2006. On March 28, 2006, Polo recorded this deed of trust on the properties.

Polo foreclosed on the properties and took title to the properties pursuant to a trustee's deed upon sale recorded on April 20, 2007. Between April and November of 2007, Vieira repeatedly made demands regarding its right to enter the properties to recover possession of the manufactured homes; Polo rejected these demands. Vieira also notified Pouya and other City officials that it owned as chattel the manufactured homes on the properties.

*The Issuance of the Notices*

Coast Capital Income Fund I, LLC (Coast Capital), became the successor in interest to Polo and on November 14, 2007, Coast Capital applied to the City's Building Department for the issuance of notices of installation pursuant to section 18551. In its application, Coast represented that it owned the properties and the manufactured homes installed on the properties. The application completed by Coast Capital stated in relevant part: "[T]he enforcement agency may obtain a title search printout from [HCD] Registration and Titling Program. The information on the title search should be compared to the information shown on the surrendered HCD Certificate of Title . . . and registration card(s). This will ensure that the most current ownership and registration documents have been submitted to the enforcement agency and that the registered owner owns the manufactured home . . . free of any liens or encumbrances. Where the title search indicates a record legal owner or junior lienholder, or both, evidence should be provided to the enforcement agency that the legal owner or junior lienholder, or both, have been paid in full or that the legal owner or junior lienholder consent to the attachment of the unit upon the satisfaction of their liens by the registered owner."

On December 10, 2007, Pouya, the acting building official for the City's Building Department, issued the notices. Pouya testified that he had no

---

[3] In the mechanic's liens action, Vieira sought to recover for the installation of six manufactured homes, including the two homes that are the subject of this lawsuit.

experience with inspecting projects involving the installation of manufactured homes. He stated that he did not read the instructions on the notices. He explained that he did not fill out the forms and that he signed the forms based on the title. Pouya acknowledged that he did not order a title search from HCD.

*The Sale of the Properties*

On May 30, 2008, Coast Capital sold the properties for $700,000 to Free at Last Properties. Fidelity National Title Company (Fidelity) issued an endorsement to its title insurance policy, insuring that the manufactured homes were affixed to the land. Fidelity reviewed, among other documents, the notices.

*Vieira's Lawsuit Against the City Defendants and Others*

Vieira filed its original complaint against Polo and others on December 5, 2007. On August 19, 2009, it filed a first amended complaint with eight causes of action against Coast Capital, the City, the City's Building Department, and others. On August 10, 2010, Vieira amended its pleading to insert Pouya as a Doe defendant.

On August 20, 2010, the trial court issued an order approving the good faith settlement between Vieira and Coast Capital, Free at Last Properties, Fidelity, and others. The settling defendants paid Vieira a total of $225,000 in exchange for the release of all of Vieira's claims against them.

During the course of litigation, Vieira dismissed various parties and causes of action. Only two causes of action and the City defendants remained in the action. Vieira claimed a substantive due process violation under 42 United States Code section 1983 against the City defendants and a claim for inverse condemnation against the City and the City's Building Department.

On October 1, 2010, the City and the City's Building Department moved for summary judgment and Pouya demurred against Vieira's complaint. With regard to the claim for a violation of civil rights (42 U.S.C. § 1983), the City and the City's Building Department argued that Vieira could not establish a policy, practice, or custom essential to establish liability under section 1983. The City also argued, among other things, that issuing notices did not change the character of the manufactured homes and, under common law, they ceased being personal property once they were affixed to the real property; thus there was no "taking" and no basis for a claim of inverse condemnation.

In opposition, Vieira argued, among other things, that the common law on fixtures was preempted by section 18551 and the manufactured homes did not

become fixtures attached to the home until the notices were issued. Manuel attached a declaration stating that Vieira had completed its installation of the manufactured homes on June 8, 2006, but they "were not ready for occupancy, as additional work remained for completion that was, pursuant to my negotiations and agreement with [the Wilsons], supposed to be performed by [the Wilsons], before the homes could be rendered habitable."

On February 9, 2011, the trial court filed its order granting summary judgment in favor of the City and the City's Building Department. The court stated that the undisputed fact that Vieira filed mechanic's liens on February 6, 2006, established that the homes had been installed prior to this date and therefore were fixtures to real property under the common law of California. The court elaborated, "Since the notice of installation has no effect for purposes of determining just compensation in [a] condemnation proceeding [citation], the issuance of such notice did not effect a taking and did not violate [Vieira's] rights to substantive due process." The court noted that Manuel claimed that the work was not completed until June 8, 2006, but stressed that Vieira could not create a triable issue of fact by disputing Vieira's own prior statements provided under penalty of perjury. Furthermore, even if the work was not completed until June 2006, the court noted that this date preceded the date of December 10, 2007, which was when the notices were issued.

On this same date, February 9, 2011, the trial court filed its order sustaining Pouya's demurrer to Vieira's second amended complaint. The court stated that the pleading failed to state a cause of action against Pouya as a matter of law because a notice of installment "does not affect the character of property for purposes of determining just compensation. . . . Thus, the issuance of such notice did not effect a taking and did not violate" Vieira's right to substantive due process.

The trial court filed its judgment in favor of the City defendants on May 26, 2011. Notice of entry of judgment was filed on June 6, 2011. Vieira filed a timely notice of appeal. The California Manufactured Housing Institute (CMHI) applied to file an amicus curiae brief in support of Vieira, and we granted this request. CMHI filed its brief on May 18, 2012, and the City defendants filed their response to the amicus curiae brief on June 8, 2012.

## DISCUSSION

### I. *Standard of Review*

A. *Summary Judgment*

The trial court granted summary judgment in favor of the City and the City's Building Department. We review a trial court's grant of summary

judgment de novo. (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 388–389 [46 Cal.Rptr.3d 668, 139 P.3d 56].) "In performing our de novo review, we must view the evidence in a light favorable to [the] plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing [the] defendant['s] own showing, and resolving any evidentiary doubts or ambiguities in [the] plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

The trial court shall grant the defendant's motion for summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that [defendant] is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has made the required showing, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493].) California law requires that "a defendant moving for summary judgment . . . present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id.* at p. 854, fn. omitted.)

## B. *Demurrer*

The trial court sustained Pouya's demurrer against Vieira's pleading without leave to amend. The standard of review governing an appeal from the judgment after the trial court sustains a demurrer without leave to amend is well established. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

## II. *The Inverse Condemnation and Substantive Due Process Claims*

### A. *Introduction*

Both of Vieira's causes of action of a substantive due process violation (42 U.S.C. § 1983) against the City defendants and inverse condemnation against the City and the City's Building Department required the City defendants to interfere with its property rights. Vieira claims that the issuance of the notices transformed its personal property, the manufactured homes, into real property and this action deprived it of its personal property without providing just compensation.

The City defendants advance numerous reasons for affirming the lower court's rulings, including Vieira's failure to exhaust its administrative remedies. We, however, need not address all of these arguments as we conclude that their contention that Vieira did not as a matter of law establish that it was deprived of a constitutionally protected property interest supports the trial court's judgment.[4]

### B. *A Property Interest Is an Element of Both of Vieira's Causes of Action*

■ "Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. . . ." (Cal. Const., art. I, § 19.) " '[I]n an inverse condemnation action, the property owner must first clear the hurdle of establishing that the public entity has, in fact, taken [or damaged] his or her property before he or she can reach the issue of "just compensation." ' [Citation.]" (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 940 [55 Cal.Rptr.2d 724, 920 P.2d 669].) Since " 'just compensation' " is a constitutional requirement, it " 'cannot be made to depend upon state [or federal] statutory provisions.' " (*Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 797 [214 Cal.Rptr. 904, 700 P.2d 794].)

■ Similarly, " 'a party asserting a deprivation of substantive due process must first establish a valid property interest within the meaning of the

---

[4] Other arguments of the City defendants are that Vieira is estopped from claiming that the homes were not its personal property and that Vieira cannot establish an inverse condemnation claim because no property was taken for a public purpose. Additionally, the City and the City's Building Department contend that Vieira may not allege a due process claim against them when a more specific constitutional amendment applies. They also assert that Vieira cannot establish that their actions shocked the conscience, or that a custom, policy, or practice led to a violation of Vieira's constitutional rights. Pouya maintains that additional grounds for affirming the dismissal of the substantive due process violation against him are that the statute of limitations against him has run, that Vieira cannot show that his conduct shocked the conscience, and that he is immune from personal liability.

Constitution.' " (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1184 [56 Cal.Rptr.2d 223].) If a cognizable property interest is established, it is not enough under 42 United States Code section 1983 to provide evidence that a government decision was arbitrary or capricious. (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1033 [103 Cal.Rptr.2d 711, 16 P.3d 130].) " 'Only a substantial infringement of state law prompted by personal or group animus, or *a deliberate flouting of the law that trammels significant personal or property rights*, qualifies for relief under [section] 1983. [Citation.] Inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under this statute.' " (*Galland*, at p. 1034, quoting *Silverman v. Barry* (D.C. Cir. 1988) 269 U.S. App.D.C. 327 [845 F.2d 1072, 1080] with approval.)

### C.  *Vieira Had No Property Interest in the Manufactured Homes at the Time the City Defendants Issued the Notices*

#### 1.  *Introduction*

Vieira claims that it had a property interest in the manufactured homes as chattel at the time the City defendants issued the notices. It maintains that the notices transformed the manufactured homes from chattel to fixtures. If the manufactured homes were fixtures to the realty at the time of the foreclosure on the properties, then Vieira had no property interest in the homes when the City defendants issued the notices and, thus, has no valid claim for a substantive due process violation under 42 United States Code section 1983 or for inverse condemnation against the City defendants. Thus, the pivotal issue is whether the manufactured homes were chattel or fixtures to the realty at the time the City defendants issued the notices.

#### 2.  *The Common Law of Fixtures*

■ Under the common law of fixtures, property is either real or personal. (Civ. Code, § 657.) Real property includes both land and things that are affixed to the land. (Civ. Code, § 658.) Manufactured homes are personal property until "affixed" to land. (Civ. Code, §§ 657, 658, 663.) "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws; except that for the purposes of sale, emblements, industrial growing crops and things attached to or forming part of the land, which are agreed to be severed before sale or under the contract of sale, shall be treated as goods and be governed by the provisions of the title of this code regulating the sales of goods." (Civ. Code, § 660.)  ■  " 'The law relating to fixtures

recognizes that under certain circumstances personal property becomes a part and parcel of real property and thereafter assumes the status of real property.' " (*Escondido Union School Dist. v. Casa Sueños De Oro, Inc.* (2005) 129 Cal.App.4th 944, 965 [29 Cal.Rptr.3d 89] (*Escondido*).)

■ " 'There are three main factors . . .' " to consider when determining whether personal property has become a fixture under the common law: " '(1) physical annexation; (2) adaptation to use with real property; (3) *intention* to annex to realty. Of these, intention is the most significant, but the manner of annexation and the use to which the property is put are relevant in determining such intention. [Citations.]' " (*Cornell v. Sennes* (1971) 18 Cal.App.3d 126, 132 [95 Cal.Rptr. 728].) " ' "[T]he intent of the parties is a controlling criterion in ascertaining whether property is permanently attached to the land or retains its identity as personalty; the character of the annexation to the land or other realty and the use made of the property are important considerations, but in most cases are subsidiarily employed for the purpose of testing the intention of the parties." [Citations.] [¶] Among the things that should be taken into consideration in deciding such a question are the following: The character of the building and the manner of its construction; the presence or absence of customary methods of attaching to or embedding in the soil; the use to which the building is adapted and to which it has been put; and any expressed intent with regard to its permanence.' " (*Escondido, supra,* 129 Cal.App.4th at p. 963.)

3. *Applying the Three-prong Test of the Common Law of Fixtures to the Undisputed Facts*

The undisputed facts establish that Vieira intended to annex the manufactured homes to the properties. In its verified mechanic's liens, Vieira claimed a lien for the total amounts the Wilsons owed on their contracts "for the following labor, services, equipment or materials furnished by" Vieira for the "installation of a manufactured home and related activities." The liens were for the entire sums due on the contracts and indicated that the installations of both manufactured homes were complete. Similarly, in its complaint filed against the Wilsons on April 18, 2006, for damages for breach of contracts and foreclosure of its mechanic's liens, Vieira alleged that it had completed all work promised to be performed under the contracts.

■ Vieira argues that the recording of the mechanic's liens did not establish intent as a matter of law because a manufactured home may be installed on a foundation but still retain its status as chattel. It adds that a mechanic's lien may be recorded before the project is completed because a contractor may be excused from further performance. "[A] contract is complete for purposes" of recording a mechanic's lien "when all work under the

contract has been performed, excused, or otherwise discharged." (*Howard S. Wright Construction Co. v. BBIC Investors, LLC* (2006) 136 Cal.App.4th 228, 241 [38 Cal.Rptr.3d 769].) Vieira asserts that the lien must recite the total amount of the contract price and therefore its description of the mechanic's liens as pertaining to an "installation of a manufactured home and related activities" was not a description of the real property but a description of the type of services provided.

Vieira's argument ignores that the language in its pleading against the Wilsons asserted that it performed *all work* and services required by the contracts. The contracts required Vieira to "install" the manufactured homes "on [their] foundations." Vieira never alleged in its pleading against the Wilsons that the work was not completely performed or that its complete performance was excused or otherwise discharged. Vieira did not claim that the contract work had not been strictly completed.

Vieira stresses that the word "installation" does not equal "affixed." We agree. The seminal factor under the three-prong test is the parties' intent. The use of the word "installation" in the contracts established an intention to have the manufactured homes affixed to the properties. The contracts specified that Vieira was to complete the following: "Ordering, transporting and installation of manufactured home, according to code. Digging and removing dirt for foundation. Install 3 sets of stairs, redwood (per home) [with three-foot] landing for back, side and front door, according to code. Transportation, craning and any equipment necessary to install home on foundation. Home installation complete to move-in, an independent inspection must be done for occupancy—required by HUD . . . ."

Vieira attempts to discount the significance of the mechanic's liens and the import of its complaint against the Wilsons by arguing that Manuel's declaration created a triable issue of fact as to whether it intended for the manufactured homes to be fixtures to the property. Manuel declared that Vieira had completed its installation of the manufactured home on June 8, 2006, but they "were not ready for occupancy, as additional work remained for completion that was, pursuant to my negotiations and agreement with [the Wilsons], supposed to be performed by [the Wilsons], before the homes could be rendered habitable."

The City defendants respond that Vieira cannot create a triable issue of fact by submitting a contrary, self-serving declaration. A party opposing a motion for summary judgment cannot offer evidence that contradicts its own judicial admissions. (*Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613 [286 Cal.Rptr. 402].) "[A] judicial admission cannot be rebutted: It estops the maker." (*Uhrich v. State Farm Fire & Casualty Co.* (2003) 109

Cal.App.4th 598, 613 [135 Cal.Rptr.2d 131].) Here, on two separate occasions—when it filed its mechanic's liens and when it filed its complaint against the Wilsons—Vieira stated under penalty of perjury that all work for installation on the manufactured homes had been completed. Accordingly, these judicial admissions are binding and dispositive without further evidence. (See, e.g., *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 870–871 [64 Cal.Rptr.2d 324].) "On summary judgment such admissions are proper and overcome evidence even when the opposing party seeks to contradict the prior admission." (*Id.* at p. 871.) This evidence supported the lower court's determination that the parties' objective intent was to attach the manufactured homes to the realty.

██ Furthermore, as the court in *Escondido, supra,* 129 Cal.App.4th 944 held, completion is not required to show an intention to affix. The appellate court in *Escondido* reviewed whether substantial evidence supported the lower court's finding that the manufactured homes were "permanently affixed" within the meaning of Civil Code section 660 and therefore compensable under eminent domain law despite the fact that manufactured homes were capable of being moved to another location. The appellate court concluded that even though all of the work connecting the manufactured homes to the foundations *had not been finished,* the homes were permanently affixed to the land within the meaning of Civil Code section 660 for the following reasons: "First, they were bolted to the pier-and-pad foundation system by the relevant date. Second, the lots had been developed for manufactured homes; indeed, the building pads were designed to match the footprints of these specific manufactured homes. Third, it was undisputed that [the buyer] purchased the parcel with the intention of dividing it into two lots and placing a manufactured home on each lot for resale, and developed the land accordingly." (*Escondido,* at p. 966.)

Similarly, here, in addition to the facts establishing an intention to affix the manufactured homes to the properties, the evidence showed that the manufactured homes had been physically attached to the property and had been "adapted to the purpose for which the property upon which they [were] located, [was] intended to be used." (*Bond Investment Co. v. Blakeley* (1927) 83 Cal.App. 696, 700 [257 P. 189].) As already noted, a fixture is affixed to the land when it is "permanently attached" "by means of cement, plaster, nails, bolts, or screws . . . ." (Civ. Code, § 660.) Even if final steps needed to be taken to make the homes habitable, Vieira asserted in its lawsuit against the Wilsons and in its mechanic's liens that it had performed its obligations under the contracts, which required installing the manufactured homes on their foundations, and completing all walkways, driveways, and sidewalks. The contracts also required Vieira to identify the sewers and to provided the electrical connections. Thus, the manufactured homes had been attached and adapted for the purpose of using them as residences on the properties.

■ Furthermore, Vieira recorded the mechanic's liens on February 6, 2006, and Vieira could record mechanic's liens only if the manufactured homes had become fixtures attached to the properties. "Real property is subject to a mechanic's lien for labor and materials *only* if the chattels installed became fixtures attached to the realty [citations] and the labor performed resulted in a permanent improvement to the realty." (*Cornell v. Sennes, supra,* 18 Cal.App.3d at p. 131.)

Accordingly, the manufactured homes were fixtures to real property when Polo foreclosed and recorded the trustee's deed upon sale on April 20, 2007; Polo acquired title to both the land and the homes. Thus, the notices did not interfere with Vieira's property interests, as it had none at the time the City defendants issued the notices.

### 4. *Section 18551 Does Not Preempt the Common Law on Fixtures*

Vieira contends that section 18551 specifies when a manufactured home is chattel and when it is a fixture to real property and this statute preempts the common law on fixtures for manufactured homes.[5] In the present case, the

---

[5] Section 18551 provides in relevant part: "The department shall establish regulations for manufactured home, mobilehome, and commercial modular foundation systems that shall be applicable throughout the state. . . . A manufactured home, mobilehome, or commercial modular may be installed on a foundation system as either a fixture or improvement to the real property, in accordance with subdivision (a), or a manufactured home or mobilehome may be installed on a foundation system as a chattel, in accordance with subdivision (b).

"(a) Installation of a manufactured home, mobilehome, or commercial modular as a fixture or improvement to the real property shall comply with all of the following:

"(1) Prior to installation of a manufactured home, mobilehome, or commercial modular on a foundation system, the manufactured home, mobilehome, or commercial modular owner or a licensed contractor shall obtain a building permit from the appropriate enforcement agency. To obtain a permit, the owner or contractor shall provide the following:

"(A) Written evidence acceptable to the enforcement agency that the manufactured home, mobilehome, or commercial modular owner owns, holds title to, or is purchasing the real property where the mobilehome is to be installed on a foundation system. . . .

"(B) Written evidence acceptable to the enforcement agency that the registered owner owns the manufactured home, mobilehome, or commercial modular free of any liens or encumbrances or, in the event that the legal owner is not the registered owner, or liens and encumbrances exist on the manufactured home, mobilehome, or commercial modular, written evidence provided by the legal owner and any lienors or encumbrancers that the legal owner, lienor, or encumbrancer consents to the attachment of the manufactured home, mobilehome, or commercial modular upon the discharge of any personal lien, that may be conditioned upon the satisfaction by the registered owner of the obligation secured by the lien.

"(C) Plans and specifications required by department regulations or a department-approved alternate for the manufactured home, mobilehome, or commercial modular foundation system.

"(D) The manufactured home, mobilehome, or commercial modular manufacturer's installation instructions, or plans and specifications signed by a California licensed architect or engineer covering the installation of an individual manufactured home, mobilehome, or

undisputed facts establish that the requirements of section 18551, subdivision (a) had not occurred prior to the recording of Coast Capital's deed of trust or prior to the foreclosure on the property. Since the requirements of section 18551, subdivision (a) were not satisfied until the notices were issued, Vieira argues that it had an interest in the manufactured homes as chattel until the notices transformed them to fixtures on the properties. Similarly, CMHI argues that Civil Code section 660 does not come into effect until after a

---

commercial modular in the absence of the manufactured home, mobilehome, or commercial modular manufacturer's instructions.

"(E) Building permit fees established by ordinance or regulation of the appropriate enforcement agency.

"(F) A fee payable to the department in the amount of eleven dollars ($11) for each transportable section of the manufactured home, mobilehome, or commercial modular, that shall be transmitted to the department at the time the certificate of occupancy is issued with a copy of the building permit and any other information concerning the manufactured home, mobilehome, or commercial modular which the department may prescribe on forms provided by the department.

"(2)(A) On the same day that the certificate of occupancy for the manufactured home, mobilehome, or commercial modular is issued by the appropriate enforcement agency, the enforcement agency shall record with the county recorder of the county where the real property is situated, that the manufactured home, mobilehome, or commercial modular has been installed upon, a document naming the owner of the real property, describing the real property with certainty, and stating that a manufactured home, mobilehome, or commercial modular has been affixed to that real property by installation on a foundation system pursuant to this subdivision.

"(B) When recorded, the document referred to in subparagraph (A) shall be indexed by the county recorder to the named owner and shall be deemed to give constructive notice as to its contents to all persons thereafter dealing with the real property.

"(C) Fees received by the department pursuant to subparagraph (F) of paragraph (1) shall be deposited in the Mobilehome-Manufactured Home Revolving Fund . . . .

"(3) The department shall adopt regulations providing for the cancellation of registration of a manufactured home, mobilehome, or commercial modular that is permanently attached to the ground on a foundation system pursuant to subdivision (a). The regulations shall provide for the surrender to the department of the certificate of title and other indicia of registration. For the purposes of this subdivision, permanent affixation to a foundation system shall be deemed to have occurred on the day a certificate of occupancy is issued to the manufactured home, mobilehome, or commercial modular owner and the document referred to in subparagraph (A) of paragraph (2) is recorded. Cancellation shall be effective as of that date and the department shall enter the cancellation on its records upon receipt of a copy of the certificate of occupancy. This subdivision shall not be construed to affect the application of existing laws, or the department's regulations or procedures with regard to the cancellation of registration, except as to the requirement therefor and the effective date thereof.

"(4) Once installed on a foundation system in compliance with this subdivision, a manufactured home, mobilehome, or commercial modular shall be deemed a fixture and a real property improvement to the real property to which it is affixed. Physical removal of the manufactured home, mobilehome, or commercial modular shall thereafter be prohibited without the consent of all persons or entities who, at the time of removal, have title to any estate or interest in the real property to which the manufactured home, mobilehome, or commercial modular is affixed."

landowner obtains a permit complying with every requirement for installing a manufactured home under section 18551, subdivision (a).[6]

■ In deciding whether section 18551 preempts the common law of fixtures, we are mindful of the basic rules of statutory construction. The rules of statutory interpretation provide that the court's " 'first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' " (*Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc.* (1997) 60 Cal.App.4th 13, 17 [70 Cal.Rptr.2d 41], quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323], superseded by statute on another issue.)

■ Here, the words of the statute as well as the legislative history, as explained in *Escondido, supra,* 129 Cal.App.4th 944, indicate that section 18551 does not apply to the determination of the property's character for the purposes of determining a "taking" or the entitlement to just compensation under the Constitution. In *Escondido,* a school district condemned the owner's land after two manufactured homes had been partially constructed on it. (*Escondido,* at pp. 954–956.) The trial court found that the manufactured homes were " 'improvements pertaining to the realty' and therefore compensable under eminent domain law." (*Id.* at p. 958.) On appeal, the school district argued, among other things, that the homes remained personal property because the purchaser had not obtained certificates of occupancy and did not have the necessary documents recorded pursuant to section 18551, subdivision (a). (*Escondido,* at p. 972.) The appellate court rejected the school district's claim and concluded that section 18551 is inapplicable to condemnation actions. (*Escondido,* at pp. 972–973.)

The court in *Escondido, supra,* 129 Cal.App.4th 944, noted that section 18551 is part of the Mobilehome Parks Act (§§ 18200–18700), which, along

---

[6] CMHI argues that it is harmonizing section 18551 with Civil Code section 660, but its argument is essentially that section 18551 preempts the common law of fixtures.

with the Manufactured Housing Act of 1980 (§§ 18000–18153), authorizes HCD to regulate manufactured homes. The court emphasized that these statutes distinguish between manufactured homes installed on a foundation system in accordance with section 18551, subdivision (a) and those that are not for the purposes of titling, registration, and taxation. (*Escondido*, at p. 972.) The court explained that section 18551, subdivision (a) sets forth the requirements for a " 'fixture or improvement to the real property' " but that is not synonymous with " 'improvements pertaining to the realty,' " which is the language in Code of Civil Procedure section 1263.210, the eminent domain statute. (*Escondido*, at p. 973, italics omitted.) The court observed that these "are distinct legal terms of art that pertain to different legal issues; they are not synonymous." (*Escondido*, at p. 973.) Furthermore, the court noted that nothing in the language of section 18551 indicated that it applies to the eminent domain law and the school district failed to provide any rationale for applying the statute to condemnation proceedings. (*Escondido*, at p. 973.)

The court in *Escondido, supra*, 129 Cal.App.4th 944 examined the legislative history of section 18551 and observed that the Legislature "distinguished between mobilehomes installed on foundation systems as 'improvements' and therefore as real property, and all other mobilehomes as personal property to establish property tax liability for mobilehomes." (*Escondido*, at p. 975.) The court concluded: "[T]he legislative history shows that the Legislature intended [section 18551] to be part of a regulatory, licensing and taxation vehicle to promote mobilehomes as an affordable housing alternative for low- and moderate-income Californians." (*Id.* at p. 976.) The notice and recording requirements of section 18551 serve the sole purpose of placing the manufactured homes on the property tax rolls to permit taxing them as an improvement of real property. Nothing in the legislative history revealed an intent for this statute to have any impact on condemnation proceedings, the determination of just compensation, or the common law of fixtures. The court clarified that it could not " ' "carry the operation of [a statute] far beyond the legislative intent and thereby make its provisions apply to transactions never contemplated by the legislative body." ' " (*Escondido*, at p. 976.)

CMHI dismisses the significance of *Escondido, supra*, 129 Cal.App.4th 944 and this court's construction of section 18551 by arguing that *Escondido* should be limited to eminent domain cases. The present case, however, involves a claim against a government entity for inverse condemnation and the wrongful taking of property. Thus, as in *Escondido*, the claims here require us to interpret " 'just compensation' " under the Constitution.

*(Redevelopment Agency v. Gilmore, supra,* 38 Cal.3d at p. 797.) CMHI provides no explanation as to why the reasoning in *Escondido* does not apply with equal force to the claims in the present case.

■ Alternatively, CMHI requests that we reject the holding in *Escondido, supra,* 129 Cal.App.4th 944. CMHI fails to provide any significant analysis of this well-reasoned decision. Furthermore, we agree with *Escondido*'s construction of the statutes and conclude that *Escondido* applies to the present case since Vieira's claims are against a government entity and are for inverse condemnation and the wrongful taking of property. Nothing in the legislative history or the language of section 18551 reveals any intention to overrule the common law of fixtures and the well-settled interpretation of Civil Code section 660. "[W]e must assume that when passing a statute the Legislature is aware of existing related laws and intends to maintain a consistent body of rules. [Citations.] . . . '. . . [I]t should not "be presumed that the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." ' " (*Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449], superseded by statute on another issue.) The Legislature "is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof." (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].)

Vieira contends that the language of section 18551 indicates an intention to preempt the law on determining the character of manufactured homes. In support of this argument, Vieira cites the following language: "The department shall establish regulations for manufactured home . . . foundation systems that shall be applicable throughout the state. When established, these regulations supersede any ordinance enacted by any city, county, or city and county applicable to manufactured home . . . foundation systems. The department may approve alternate foundation systems to those provided by regulation where the department is satisfied of equivalent performance." (§ 18551.)

■ The foregoing language does not indicate an intention to preempt all of the law on manufactured homes and the common law of fixtures. The above mentioned language reflects a very narrow preemptive effect. The plain language of section 18551 states that this statute supersedes regulations related to foundation systems for manufactured homes; the statute is silent regarding the common law of fixtures.

Vieira emphasizes that section 18551 was passed after the common law was codified and the more recent law takes precedence over the common law. (See *Fuentes v. Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at p. 7 [when there is an irreconcilable conflict between two laws, the court should give effect to the more recently enacted law].) Additionally, it claims that the specific provision of section 18551 should prevail over the more general common law. (See, e.g., *Rose v. State of California* (1942) 19 Cal.2d 713, 723–724 [123 P.2d 505] ["It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former."].)

Vieira's argument is not persuasive because section 18551 and the common law of fixtures do not govern the same subject matter. Vieira cites *Sequoia Park Associates v. County of Sonoma* (2009) 176 Cal.App.4th 1270 [98 Cal.Rptr.3d 669] to support its argument, but this case is unavailing. The court in *Sequoia Park* noted that the Manufactured Housing Act of 1980 (§§ 18000–18153) "regulates the sale, licensing, registration, and titling of mobilehomes. The Legislature declared that the provisions of this measure 'apply to all parts of the state and supersede' any conflicting local ordinance. (Health & Saf. Code, § 18015.) [HCD] is in charge of enforcement. (Health & Saf. Code, §§ 18020, 18022, 18058.)" (*Sequoia Park*, at p. 1280.) The court added that these Health and Safety Code statutes indicate that "HCD, a state agency, not localities," is "entrusted with the authority to formulate 'specific requirements relating to construction, maintenance, occupancy, use, and design' of mobilehome parks [citations]." (*Sequoia Park*, at p. 1281.) The court's statements in *Sequoia Park* are in accord with the conclusion in *Escondido* that the provisions on manufactured homes in the Health and Safety Code are concerned solely with the regulation of the homes for construction, taxing, and the issuance of permits for the operation of mobilehome parks. (See *Sequoia Park*, at pp. 1281–1282.)

Vieira contends that the language of section 18551 makes it clear that installing a manufactured home on a foundation system does not automatically convert the manufactured home to realty. Vieira emphasizes that section 18551, subdivision (a) sets forth the steps for converting a manufactured home that was a fixture on real property back to chattel if it is moved off its foundation. Vieira insists that applying the common law of fixtures to manufactured homes renders section 18551, subdivision (b) a nullity. Section 18551, subdivision (b), according to Vieira, contemplates that a manufactured home on a foundation system may remain as chattel.

Section 18551, subdivision (b) provides: "The installation of a manufactured home . . . on a foundation system as chattel shall be in accordance with Section 18613 and shall be deemed to meet or exceed the requirements of Section 18613.4. This subdivision shall not be construed to affect the application of sales and use or property taxes. No provisions of this subdivision are intended, nor shall they be construed, to affect the ownership interest of any owner of a manufactured home or mobilehome." Nothing in the language of this statute suggests that it has any effect on Vieira's claim of a property interest in the manufactured homes.

Contrary to Vieira's argument, the common law of fixtures does not render any of the language of section 18551 a nullity. As detailed in *Escondido*, nothing in this statute indicates that the Legislature intended section 18551 to have any effect over a determination whether a manufactured home is chattel or a fixture on real property for the purpose of determining "just compensation" under the California Constitution. Thus, section 18551, subdivision (b) remains in effect and applies to the regulation and taxation of manufactured homes.

Vieira also cites section 18555, subdivision (i) to support its argument that a manufactured home remains chattel until there is compliance with the requirements of section 18551. This section reads: "(i) Notwithstanding any other provision of law, any manufactured home or mobilehome not installed on a foundation system pursuant to subdivision (a) of Section 18551 or converted to a fixture and improvement to real property as prescribed by this section shall not be deemed a fixture or improvement to the real property. This subdivision shall not be construed to affect the application of sales and use or property taxes." (§ 18555, subd. (i).) Vieira maintains that the language of "[n]otwithstanding any other provision of law" and "shall not be deemed a fixture or improvement to the real property" means that all other laws related to the determination of the character of property are to be disregarded.

Vieira's argument, however, violates the rules of statutory construction, which are to consider the statute in its context and to consider the statute's purpose. (See *Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc., supra*, 60 Cal.App.4th at p. 17.) Section 18555 is concerned with the conversion of mobilehome parks from a tenancy to resident ownership. As repeatedly stressed, the goals of the Mobilehome Parks Act are to promote "the health and safety of mobilehome residents" and these goals "are implemented through the HCD's establishment of standards for 'construction,

maintenance, occupancy, use, and design of . . . parks.' " (*County of Santa Cruz v. Waterhouse* (2005) 127 Cal.App.4th 1483, 1487, 1489 [26 Cal.Rptr.3d 543] [recognizing that the purpose of the Mobilehome Parks Act is to protect the health and safety of mobilehome park residents, "as well as protect the investment value of [their] mobilehomes"].) This act is not relevant to the question whether Vieira has a property interest in the manufactured homes such that it is entitled to "just compensation" from the City defendants.

Finally, Vieira advances policy reasons for requiring compliance with section 18551, subdivision (a) before permitting a manufactured home to be considered a fixture on property. It asserts that the state's licensing and property tax scheme for manufactured homes requires compliance. Vieira also argues that "if the statutory scheme for properly transferring title to manufactured homes is not strictly complied with, the system of protecting inventory lienholders and other persons taking security interests in manufactured homes, will be thrown into total disarray . . . ." This argument has little merit. A consideration whether Vieira has a property interest in the manufactured homes for the purposes of determining a substantive due process violation and inverse condemnation against the government and entitlement to just compensation has no impact on the licensing and tax regulations imposed by the state.

The CMHI also advances a policy argument and maintains that applying the common law definition of what constitutes a fixture will allow debtors and others in the manufactured housing industry to terminate their secured obligations to the manufactured housing lenders without the lenders' permission. In the present case, however, Vieira was not a secured creditor. Vieira's contracts with the Wilsons did not include any security instrument but simply stated that the Wilsons would pay Vieira for the homes and their installation out of escrow when the Wilsons sold the properties.

We agree with the reasoning and analysis in *Escondido* and hold that section 18551 does not preempt the common law of fixtures as this statute concerns the regulation of manufactured homes and mobilehomes and does not implicate the right to just compensation for the government's taking of property. We therefore conclude that the trial court correctly rejected Vieira's claim of a substantive due process violation under 42 United States Code section 1983 against the City defendants and its claim of inverse condemnation against the City and the City's Building Department.

## DISPOSITION

The judgment is affirmed. Vieira is to pay the costs of appeal.

Kline, P. J., and Haerle, J., concurred.

A petition for a rehearing was denied September 13, 2012, and the opinion was modified to read as printed above.