

ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No.    NC-12-1579-PaDJu |
| | ) |
| JESUS EDGAR MONTANO, | ) Bk. No.    10-71788 |
| | ) |
|         Debtor. | ) Adv. No.    11-04008 |
| _____ | ) |
| | ) |
| | ) |
| HERITAGE PACIFIC FINANCIAL, LLC, | ) |
| | ) |
|         Appellant, | ) |
| | ) |
| v. | ) **O P I N I O N** |
| | ) |
| JESUS EDGAR MONTANO, | ) |
| | ) |
|         Appellee. | ) |
| _____ | ) |

Argued and Submitted on September 20, 2013
at San Francisco, California

Filed - November 1, 2013

Appeal from the United States Bankruptcy Court
for the Northern District of California

Hon. William J. Lafferty, U.S. Bankruptcy Judge, Presiding

Appearances:     Brad A. Mokri argued for appellant Heritage Pacific Financial, LLC; Tess Meyers Santiago argued for appellee Jesus Edgar Montano.

Before:  PAPPAS, DUNN and JURY, Bankruptcy Judges.

PAPPAS, Bankruptcy Judge:

Creditor Heritage Pacific Financial, LLC ("Heritage") appeals the decisions of the bankruptcy court: (1) granting a summary judgment dismissing Heritage's § 523(a)(2) complaint against chapter 7[1] debtor Jesus Edgar Montano ("Montano") because enforcement of its claim was barred by Cal. Code Civ. Proc. § 726 (f) and (g);[2] and (2) after initially denying the motion, on reconsideration, granting Montano's request for an award of attorneys fees and costs. We AFFIRM.

**FACTS**

Montano is a native of El Salvador, with limited spoken English language skills, and no ability to read or write English. In November 2006, Montano purchased a house in Oakland, California (the "Property"). To obtain financing, he contacted a mortgage broker who, according to Montano, collected his financial information in a conversation over the phone and then later incorporated it into a Universal Residential Loan Application (Form 1003) (the "URLA"). The record is not clear when this telephone conversation took place, or how WMC Mortgage Corporation ("WMC"), the eventual lender, was contacted. However, the record shows that WMC was asked by the broker to consider Montano's application for a primary loan of $348,750, and a second loan of

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. Civil Rule references are to the Federal Rules of Civil Procedure 1-86.

[2] For brevity, we abbreviate Cal. Code Civ. Proc. as CCCP.

$89,990, to purchase the Property.

Montano's loan requests were approved by WMC. On November 22, 2006, Montano appeared before a notary to complete the paperwork for the loan applications. At that time, he signed the URLA, the notes for the two loans, and separate deeds of trust securing each loan. Significantly, Montano initialed each page of the URLA, except for the page which contained specific information regarding the income he purportedly received from wages and self-employment.

The parties agree that the URLA contained incorrect information about Montano's income. The URLA stated that Montano received a total of $8,090 per month, $3,500 of which were wages he earned working as an auto detailer at a local dealership, and the remainder as income generated from his supposed business, Montano Moving Services. Although Montano was in fact employed at the auto dealership at the time of applying for the loans to purchase the Property, Montano maintains that he was never self-employed, nor that he received any income from Montano Moving Services.

There are other documents that Heritage asserts were contained in Montano's loan application materials submitted to WMC: (1) separate letters of reference from Joel Rendon, Marta Madriz and Vantu Tran, each stating that they were happy with the moving services supposedly provided by Montano; (2) copies of two Craigslist internet advertisements for Montano Moving Services; and (3) a letter from Guadalupe Perez, on the letterhead of "Perez Income Tax," indicating that she had provided accounting services for Montano and Montano Moving Services for the previous three

years. Montano alleges that these documents were all forgeries created without his knowledge by Joel Rendon, an employee of the loan broker.

The Montano loan application file also contained WMC's prefunding audit forms signed by Jonathan Cobb on November 30, 2006. One such form relates to Montano's self-employment; it indicates that Cobb "spoke with tax preparer. He verified that he has filed schedule C tax info for the borrower for the last 3 years." The second form relates to employment verification. Cobb supposedly spoke with the human resources manager for the auto dealership and verified that Montano was employed there. There is no indication on either form that the income amounts shown in the loan application were verified to be accurate.

WMC approved both of Montano's loans on December 4, 2006.[3]

Montano resided at the Property purchased with the loans for seven months, until about June 2007. After making only five payments on the loans, he defaulted on the primary loan and, on July 17, 2007, WMC filed a notice of default to foreclose the first priority deed of trust. A trustee's sale occurred, and the Property was sold on October 22, 2007. The now-unsecured second loan note was purchased by Heritage on January 20, 2009.

Heritage alleges that, only after purchasing the second loan note, it discovered that Montano had misrepresented his income on the URLA. Heritage filed a complaint in Alameda County Superior Court in April 2010, alleging that Montano obtained the second

---

[3] There is very little information in the record concerning the closing of the loan transactions. WMC refers to its December 4, 2006 actions as "settlement of the loan." We assume that the funds were disbursed on or after this settlement.

-4-

loan by fraud.

Montano filed a chapter 7 bankruptcy petition on October 13, 2010. His schedule F lists a debt for $89,990.00 owed to Heritage for the second mortgage loan.

Heritage commenced the adversary proceeding giving rise to this appeal on January 9, 2011. In its complaint, Heritage asked the bankruptcy court to determine that its $89,990.00 claim against Montano based upon the second loan note was excepted from discharge for fraud under § 523(a)(2)(A) and (B). According to Heritage, Montano knew that the URLA and supporting documentation he submitted to WMC to obtain the loans were materially false.

Montano's initial response to the complaint was a motion to dismiss under Civil Rule 12(b)(5) and (6), filed on February 17, 2011, and amended on February 25, 2011. In the motion, Montano challenged Heritage's right to relief because the complaint failed to establish Heritage's status as a creditor. Further, Montano argued that Heritage had not pled sufficient facts to support an exception to discharge under either § 523(a)(2)(A) or (B). Also on February 25, 2011, Montano filed a cross-complaint against Heritage seeking to recover his attorneys fees and costs incurred in the adversary proceeding under § 523(d).

A hearing on Montano's dismissal motion was conducted on March 25, 2011. After hearing from the parties, the bankruptcy court[4] denied Montano's motion to dismiss, ruling, among other things, that Heritage had pled sufficient facts to state a claim

---

[4] The Honorable Dennis Montali presided at the hearing on March 25, 2011, and ruled on the motion. The adversary proceeding was subsequently assigned to the Honorable William Lafferty, who entered the orders at issue in this appeal.

under § 523(a)(2)(A) plausible on its face.[5] Although Montano's cross-claim seeking recovery of attorneys fees under § 523(d) was not addressed at that hearing, the court made extensive comments regarding the challenges Heritage would face in establishing that it had substantial justification for prosecuting the adversary proceeding against Montano:

> The original lender has to show or you for Heritage have to show that the original lender justifiably relied in this case, not what some expert says some hypothetical lender would normally do. . . . How are you going to prove it [?] And I'm not hearing a very good answer. . . . But I also would like to be practical too and not waste time if at the end of the day you simply don't have a case to prove. . . . If we start with the fact that the original lender is defunct and whoever made a decision at the original lender is nowhere to be found. But the law of the [Boyajian] case makes it abundantly clear that you [have] got to show who made the reliance and who was defrauded. Not your client. So I don't know how you are going to prove it.

Hr'g Tr. 7:9-8:9, March 25, 2011.

After considerable sparring in discovery disputes, Montano filed a motion for summary judgment on February 21, 2012. Montano's motion was founded on his arguments that: (1) enforcement of Heritage's claim was barred by the statute of limitations; (2) the claim was barred by California's one-action

---

[5] The bankruptcy court did not address Heritage's claim under § 523(a)(2)(B). This is curious since Heritage's theory is that Montano obtained the loan through use of a fraudulent loan application and supporting written materials concerning his financial condition, a claim governed exclusively by § 523(a)(2)(B). By its terms, § 523(a)(2)(A) excludes "a statement respecting the debtor's or an insider's financial condition." By contrast, § 523(a)(2)(B)(ii) explicitly requires such a written statement. Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 69 (9th Cir. BAP 1998).

At oral argument before the Panel, Heritage clarified that it has abandoned its claim under § 523(a)(2)(A) and proceeded in the bankruptcy court and this appeal solely under § 523(a)(2)(B).

rule; (3) the claim was barred by California's anti-deficiency statutes; (4) the claim should be dismissed because Heritage had not established that it was the real party in interest; (5) Heritage was not properly assigned the claim; and (6) Heritage could not establish that any fraud occurred.

Heritage responded to the summary judgment motion on March 1 and 7, 2012. In addition to some procedural arguments regarding timeliness of Montano's motion under the local rules, Heritage countered Montano's arguments, contending that: (1) its claim was not time-barred because the statute of limitations did not begin to run until the foreclosure occurred; (2) neither the one-action rule nor the anti-deficiency statutes apply to a claim against a borrower for fraud; (3) CCCP § 726(a) does not apply to "sold-out" junior lienholders; (4) Heritage is the valid holder of the note on the second mortgage loan; and (5) WMC had complied with industry standards for determining Montano's creditworthiness in relying on the URLA and supporting documents. Attached to Heritage's response was a declaration of Mark G. Scheuerman, offered as an expert witness, who stated that, in his opinion, WMC abided by the general standards of practices and customs in the lending industry in determining a borrower's creditworthiness at the time of the loans. Also attached was a declaration of Diane Taylor that had been prepared for an unrelated state court case, identifying her as "assistant secretary" of WMC Mortgage, LLC, the successor to WMC. Taylor declared that "WMC relied on the information provided by an applicant-borrower in his/her loan application through all stages of the underwriting process."

Lengthy hearings on the summary judgment motion took place on

April 11 and 23, 2012. As shown in the transcripts, all issues raised by the parties were addressed by counsel, and the bankruptcy court actively engaged in discussions with them. At the conclusion of the hearings, the court explained the reasons for its decision:

> I am convinced that [CCCP §§] 726(f) and (g) apply to this situation and on that basis I'm going to grant the motion for summary judgment. . . . On this set of facts, I'm concluding that this was owner-occupied property and I'm also concluding that the amount of the debt falls within the prohibition [of § 726(g)]. I'm aware of the argument that perhaps the Legislature meant something else in terms of what the aggregate debt would be, but that is not what the statute says. It's something that easily could have been expressed as such and easily, frankly, could have been corrected thereafter but it hasn't been. So I'm dealing with the statute as I believe it to be. . . . I am not accepting the proposition that [§] 726(f) and (g) simply parallel some other doctrine of allowing fraud claims against borrowers. I see nothing in the way the statute is drafted or the words of the [Legislative History] to indicate that. . . . I'm determining that summary judgment is appropriate on the grounds of the applicability of sections 726(f) and (g) in this case. I think many other arguments were made are of some interest, and obviously a lot of time and effort went into those arguments. But because this disposes of the matter, I'm going to leave it at that.

Hr'g Tr. 107:18–108:22, April 23, 2012. In response to a query by Montano's counsel noting that "we had moved for fees under [§] 523(d) and that the debt remains discharged, it was a consumer debt, and the complaint was brought without a reasonable basis in law," the bankruptcy court responded, "I'm denying that. I think those are close questions. I'm denying that." Hr'g Tr. 109:4-9, April 23, 2012.

On June 5, 2012, the bankruptcy court entered an Order on Defendant's Motion for Summary Judgment (the "Summary Judgment Order"), granting the motion "on the basis that the [Heritage]

-8-

claim is barred by California Code [of Civil Procedure §] 726(f) and (g) for the reasons orally stated on the record."

On June 19, 2012, Montano filed a motion for reconsideration. In it, Montano argued that it was legal error for the bankruptcy court to deny his § 523(d) motion for an award of attorneys fees and costs without making appropriate findings, especially where Heritage could not show substantial justification for prosecuting the adversary proceeding. Heritage responded to this motion on July 18, 2012, arguing that Montano was merely rearguing issues that were previously raised in the summary judgment proceedings. Heritage further asserted that its complaint against Montano was substantially justified by the facts and the law.

At an initial hearing on the motion for reconsideration on August 1, 2012, the bankruptcy court directed the parties to submit additional briefing on whether Heritage's action against Montano was substantially justified at all stages of the case. At the continued hearing on September 5, 2012, after hearing more argument from counsel, the bankruptcy court noted that it had disposed of summary judgment by ruling on only one ground: that CCCP §§ 726(f) and (g) barred Heritage from asserting its fraud claim against Montano. While the court acknowledged that it had not reached Montano's other arguments regarding standing, assignability of the note, Montano's lack of intent to deceive, or Heritage's reliance on the loan application income information, the court concluded that,

> the right analysis for [§] 523(d) is to go back and see if there were facts and law on [Heritage's] side, even though I didn't reach them in disposing of the summary judgment motion. I think once I have a request under [§] 523(d), that's what I'm supposed to do, and frankly

-9-

is what I didn't do at the end of the hearing because I was focusing on what I did decide.

Hr'g Tr. 41:2-9, September 5, 2012.

After next hearing arguments from counsel regarding Heritage's position at each stage of the litigation regarding the elements of fraud, the bankruptcy court focused on one necessary element of Heritage's fraud claim, reliance, and questioned whether Heritage had met its burden of showing that WMC had actually relied on the income representations in the loan application materials submitted by Montano. The court then reminded Heritage of the court's earlier admonition at the hearing on the dismissal motion that Heritage would face a significant hurdle to establish actual reliance by a defunct lender.

Heritage had submitted three declarations to support its position that WMC had actually relied on the misrepresentations allegedly made by Montano in approving the loans, in which: Mr. Ganter, Heritage's in-house counsel, described his investigation of Montano's alleged statements; Mr. Scheuerman, an expert witness, opined that WMC met industry standards for determining creditworthiness; and Ms. Taylor, an assistant secretary in the successor business to WMC, stated that WMC relied on the income assertions in the loan application at all stages of the loan process.

The bankruptcy court rejected Heritage's showing. It noted that the Ganter declaration simply did not address whether WMC relied on the URLA and that, additionally, Montano had pointed out several inconsistencies in Ganter's statements. The Scheuerman declaration, according to the court, "helps me decide whether

-10-

something meets an industry standard or not. So he's not talking about actual reliance [by WMC]." Hr'g Tr. 43:5-6, September 5, 2012.

The bankruptcy court expressed befuddlement regarding the Taylor declaration: "I couldn't tell who she was from the declaration, frankly. I couldn't tell how she'd have any knowledge of the issue. She didn't identify . . . the person who looked at [the URLA], and what she said was so completely conclusory." Id. at 43:8-13. The court concluded:

> I am granting the motion for reconsideration to the extent that it put into issue the elements under [§] 523(a)(2)(B) that were set forth in the motion for summary judgment. Those directly included the reliance element. The predicate for any reliance element is that there was actual reliance by a person, and I'm finding that that simply was not demonstrated, and its not a credibility issue. The declarations simply didn't go to the subject in any meaningful way.

Id. at 45:3-11.

An order granting the motion for reconsideration, and awarding attorneys fees and costs under § 523(d) to Montano, was entered on September 27, 2012 (the "Reconsideration Order").[6] Following entry of a final judgment in the adversary proceeding on October 22, 2012, Heritage filed a timely appeal regarding both the Summary Judgment Order and Reconsideration Order, on November 2, 2012.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (I). We have jurisdiction under 28 U.S.C. § 158.

---

[6] In its order on Defendant's Motion for Attorney's Fees and Costs, the bankruptcy court awarded Montano $69,782.19 in attorney's fees and $1,085.12 in costs. Heritage has not challenged the amount awarded in this appeal.

-11-

Whether the bankruptcy court erred in granting Montano's motion for summary judgment against Heritage because CCCP § 726 barred enforcement of Heritage's claim against Montano.

Whether the bankruptcy court abused its discretion in reconsidering its earlier order denying an award of attorneys fees and costs to Montano and then granting that award under § 523(d).

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's grant of summary judgment. SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.), 571 F.3d 826, 834 (9th Cir. 2009). The bankruptcy court's interpretation of state law is also reviewed de novo. Lahoti v. Vericheck, 636 F.3d 501, 505 (9th Cir. 2011).

We review decisions regarding relief from judgment under Rules 9024 and 9023, which incorporate Civil Rules 60(b)(1) and 59(e), for abuse of discretion. Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1223 (9th Cir. 2000); Morris v. Peralta (In re Peralta), 317 B.R. 381, 385 (9th Cir. BAP 2004).

A bankruptcy court's order awarding attorneys fees and costs under § 523(d) is reviewed for abuse of discretion. First Card v. Hunt (In re Hunt), 238 F.3d 1098, 1101 (9th Cir. 2001) (adopting the BAP's standard of review of § 523(d) announced in First Card v. Carolan (In re Carolan), 204 B.R. 980, 984 (9th Cir. BAP 1996)). Under this standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). And if the bankruptcy court identified the correct legal rule, we then

determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

**DISCUSSION**

**I.**

**The bankruptcy court did not err in granting Montano's motion for summary judgment against Heritage because CCCP § 726 barred enforcement of Heritage's claim against Montano.**

In the bankruptcy court, Heritage sought a § 523(a)(2)(B) exception to Montano's discharge because, Heritage alleged, the loan application and other materials Montano submitted to WMC to obtain the second mortgage loan contained fraudulent information. The bankruptcy court granted summary judgment to Montano, and dismissed Heritage's exception to discharge claim, a ruling Heritage challenges in this appeal. This discharge exception provides:

§ 523. Exceptions to discharge

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by . . .

        (B) use of a statement in writing —

            (i)   that is materially false;
            (ii)  respecting the debtor's or an insider's financial condition;
            (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

-13-

                    (iv)  that the debtor caused to be made or
                          published with intent to deceive[.]**[7]**

     Summary judgment may be granted "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Civil Rule 56(a), incorporated by Rule 7056; Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008).  Where only a question of law is at issue, summary judgment is proper. Asuncion v. U.S. Immigration & Naturalization Serv., 427 F.2d. 523, 524 (9th Cir. 1970).

     Here, the bankruptcy court determined that, as a matter of law, enforcement of Heritage's claim against Montano was barred under applicable state law, CCCP § 726(f) and (g).  The court announced its decision on summary judgment at the hearing on September 5, 2012:

> On this set of facts, I'm concluding that this was owner-occupied property and I'm also concluding that the amount of the debt falls within the prohibition [of CCCP § 726(g)]. It's $89,000 some-odd worth of debt. I'm aware of the argument that perhaps the Legislature meant something else in terms of what the aggregate debt would be, but that is not what the statute says.  It's something that really could have been expressed as such and easily, frankly, could have been corrected thereafter, but it hasn't been.  So I'm dealing with the

---

[7] Of course, Heritage did not loan any money to Montano; its claim against him stems from its acquisition of the second note from the original lender, WMC, after the foreclosure of the primary loan mortgage.  Ninth Circuit case law establishes that Heritage may stand in the shoes of WMC and may pursue an exception to discharge under such circumstances, but only if it can establish that Montano, with the intent to deceive, used a materially false written statement to obtain the loan from WMC, and that WMC reasonably relied upon that statement.  Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1093 (9th Cir. 2009) (affirming the BAP's reasoning in New Falls Corp. v. Boyajian (In re Boyajian), 367 B.R. 138, 148 (9th Cir. BAP 2007)).

-14-

> statute as I believe it to be. . . . I'm determining that summary judgment is appropriate on the grounds of the applicability of Sections 726(f) and (g) in this case.

Hr'g Tr. 107:19-108:21, September 5, 2012.

We agree with the bankruptcy court that the state statutory provisions are dispositive of the issues on appeal and, therefore, we affirm the bankruptcy court's decision to grant summary judgment dismissing Heritage's exception to discharge claim.

In construing the state statutes in this case, we are mindful of the instructions of the California Supreme Court that we are to look to the statutes' plain meaning. Bonnell v. Medical Bd., 82 P.3d 740, 743 (Cal. 2003). When interpreting a statute, we must discover the intent of the legislature to give effect to its purpose, being careful to give the statute's words their "plain, commonsense meaning." Kavanaugh v. W. Sonoma Cnty. Union High School, 62 P.3d 54, 59 (Cal. 2003). If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary. Id. When the statutory language is unambiguous, "we presume the Legislature meant what it said and the plain meaning of the statute governs." Diamond Multimedia Sys., Inc. v. Super. Ct., 968 P.2d 539, 546 (Cal. 1999).

The parties to this appeal have not argued that CCCP § 726(f) and (g) are ambiguous. Instead, they seem to agree that the statutory language should be viewed as parts of an interconnected series of laws laying out the rules for collection of deficiencies resulting from mortgage and trust deed foreclosure sales, and the exceptions to those rules. In this respect, the parties are

-15-

correct — no laws should be considered in isolation. Rather, we must "interpret the statute[s] as a whole, so as to make sense of the entire statutory scheme." Carrisales v. Dep't of Corrections, 988 P.2d 1083, 1085 (Cal. 1999). However, the process is somewhat challenging in this context, given the maze of elaborate and interrelated foreclosure and antideficiency statutes in California relating to the enforcement of obligations secured by interests in real property. Alliance Mortg. Co. v. Rothwell, 900 P.2d 601, 611 (Cal. 1995); Metropolitan Life Ins. Co. v. Sunnymede Shopping Ctr. (In re Sunnymede Shopping Ctr.), 178 B.R. 809, 815 (9th Cir. BAP 1995) (describing the maze of "statutory protections and procedures under California law which protect debtors by restricting the secured creditor's remedies for debts secured by mortgages or deeds of trust in real property."). We examine this statutory framework below.

Our analysis begins by acknowledging that, in California, a lender's primary, and sometimes only, remedy to collect a loan secured by a mortgage is to foreclose:

> **[CCCP] § 726. Form of action . . .** (a) There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter.

Alliance Mortg. Co., 900 P.2d at 611 (only form of action for recovery of any debt or enforcement of any rights secured by a mortgage or deed of trust is action for foreclosure); Bank of Cal., N.A. v. Leone, 37 Cal. App.3d 444, 447 (Cal. Ct. App. 1974) ("For the purposes of [CCCP § 726(a)], a deed of trust is treated as a mortgage.").

-16-

Of course, a foreclosure may not net the lender sufficient sale proceeds to satisfy the lender's claim in full. Acknowledging that reality, CCCP § 726(b)[8] generally preserves the lender's right to pursue a personal judgment against the borrower for any deficiency, unless that right has been waived by the creditor, "or a deficiency judgment is prohibited by CCCP § 580b."

CCCP § 580a[9] prescribes the rules for a deficiency action. But, as noted in CCCP § 726(b), CCCP § 580b plainly prohibits a lender's right to recover a deficiency judgment for certain types of indebtedness.  In pertinent part, that statute provides:

> **[CCCP] § 580b. Contract for sale; deed of trust or mortgage; credit transaction; chattel mortgage; deficiency judgments prohibited**
>
> (a) No deficiency judgment shall lie in any event for the following: . . . (3) Under a deed of trust or mortgage on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of that dwelling, occupied entirely or in part by

---

[8]  "(b) The decree for the foreclosure of a mortgage or deed of trust secured by real property or estate for years therein shall declare the amount of the indebtedness or right so secured and, unless judgment for any deficiency there may be between the sale price and the amount due with costs is waived by the judgment creditor or a deficiency judgment is prohibited by Section 580b, shall determine the personal liability of any defendant for the payment of the debt secured by the mortgage or deed of trust and shall name the defendants against whom a deficiency judgment may be ordered following the proceedings prescribed in this section . . . ."  CCCP § 726(b).

[9]  "Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his or her complaint the entire amount of the indebtedness which was secured by the deed of trust or mortgage at the time of sale, the amount for which the real property or interest therein was sold and the fair market value thereof at the date of sale and the date of that sale. . . ."  CCCP § 580a.

-17-

the purchaser.[10]

See also Roseleaf, 378 P.2d at 98 ("a creditor's right to judgment against debtor for a deficiency may be limited or barred by section . . . 580b"); Grammercy Inv. Tr. v. Lakemont Homes Nev., Inc., 198 Cal. App.4th 903, 911 (Cal. Ct. App. 2011) (waiver by creditor allowed under CCCP § 726(b)); Prestige Ltd. P'ship v. E. Bay Car Wash Partners (In re Prestige Ltd. P'ship), 234 F.3d 1108, 1117 (9th Cir. 2000) (holding that CCCP § 580b precludes deficiency judgments on purchase money notes).

While the one-action rule provides that a lender secured by a mortgage must foreclose to collect its debt, and CCCP §§ 726(b) and 580b prescribe rules and prohibitions regarding the recovery of a deficiency judgment by a lender after foreclosure, CCCP § 726 also contains an important exception to its operation:

> (f) Notwithstanding this section or any other provision of law to the contrary, any person authorized by this state to make or arrange loans secured by real property or any successor in interest thereto, that originates, acquires, or purchases, in whole or in part, any loan secured directly or collaterally, in whole or in part, by a mortgage or deed of trust on real property or an estate for years therein, may bring an action for recovery of damages, including exemplary damages not to exceed 50 percent of the actual damages, against a borrower where the action is based on fraud under Section 1572 of the Civil Code and the fraudulent

---

[10] Operating in tandem, CCCP § 726(a) and CCCP § 580b are collectively referred to as California's "antideficiency statutes." There is some authority for the proposition that CCCP § 726(a) does not apply to sold-out junior lienors. Roseleaf Corp. v. Chierighino, 387 P.2d 97, 100 (Cal. 1963); see also CJA Corp. v. Trans-Action Fin. Corp., 86 Cal. App.4th 664, 665 (Cal. Ct. App. 2001) ("an exception to the one action rule has been recognized in those cases where the security has been lost through no fault of the creditor"). In this appeal, Montano concedes that CCCP § 726(a) may not apply to Heritage. We conclude, nevertheless, that CCCP § 580b does apply to all debts arising from purchase money loans, except, as discussed below, debts induced by fraud as provided in CCCP §§ 726(f) and (g).

-18-

conduct by the borrower induced the original lender to make that loan.

Finally, even though under CCCP § 726(f) the one-action rule does not bar a creditor's action to recover damages based on the fraudulent conduct of the borrower that induced the original lender to make a loan, that exception is itself subject to an exception:

**[CCCP] § 726(g).**

(g) Subdivision (f) does not apply to loans secured by single-family, owner-occupied residential real property, when the property is actually occupied by the borrower as represented to the lender in order to obtain the loan and the loan is for an amount of one hundred fifty thousand dollars ($150,000) or less, as adjusted annually, commencing on January 1, 1987, to the Consumer Price Index as published by the United States Department of Labor.

In sum, then, in California, under CCCP § 726(f), even though a lender may pursue a borrower for fraud in the inducement of a loan without regard to the one-action rule in CCCP § 726(a) and the antideficiency limits in CCCP § 580b, CCCP § 726(g) makes clear that, with respect to a certain type of loan (i.e., those secured by "owner-occupied residential real property," when actually occupied by the borrower, where "the loan" is for $150,000 or less), the lender may not pursue the borrower for fraud.

CCCP §§ 726(g) applies in this case. It is undisputed here that two separate loans were made by WMC to Montano, both of which were secured by deeds of trust, which Montano used to pay the purchase price for his acquisition of the Property. Thus, at least at the time of loan origination, the deeds of trust granted

-19-

by Montano to WMC were purchase money mortgages.[11]  It also seems clear that enforcement of the WMC second loan, upon which Montano's liability to Heritage is based, was subject to the one-action rule, and to the antideficiency statutes.  However, Heritage argues, for several reasons, that its claim against Montano is not restricted by these statutes.

Heritage notes that its claim against Montano seeks an exception to discharge to collect on a "sold-out" junior lien.  It contends that CCCP § 726(b) would not apply to its action.  But California case law establishes that the deficiency action bar allowed under CCCP § 726(b), and subject to CCCP § 580b, applies to holders of purchase money second mortgage loans.  Kurtz v. Calvo, 75 Cal. App.4th 191, 194 (Cal. Ct. App. 1999) ("Section 580b prohibits a deficiency judgment after a judicial or nonjudicial foreclosure under a trust deed securing a purchase money loan. For purposes of section 580b, a deficiency judgment includes a judgment in an action on the note by a sold-out junior lienholder.") (Citations omitted.)

Heritage relies upon several cases it believes are at odds with Calvo.  For example, in Cadlerock v. Lobel, 206 Cal. App.4th 1531, 1541 (Cal. Ct. App. 2012), the court ruled that an assignee of a junior loan, who was subsequently "sold out" by the senior lienholder's nonjudicial foreclosure sale, can pursue the borrower for a money judgment in the amount of the debt owed.  However, Cadlerock made its ruling because that case did not involve

---

[11]  A purchase money transaction occurs when "[t]he sum represented by the note and trust deed was a necessary part of the purchase price."  Stockton Sav. & Loan Bank v. Massanet, 114 P.2d 592, 600 (Cal. 1941).

purchase money loans and, thus, CCCP § 580b did not apply:

> Section 580b is inapplicable to the instant case because the loans at issue were not used as purchase money. Section 580b "prohibits all deficiency judgments" in specified real property transactions involving the provision of purchase money, regardless of whether the creditor conducts a judicial or nonjudicial foreclosure. (See In re Marriage of Oropallo (1998) 68 Cal. App.4th 997, 1003, 80 Cal. Rptr. 2d 669.).

Id. at n.2.

In another case cited by Heritage, Nat'l Enters., Inc. v. Woods, 94 Cal. App.4th 1217, 1226 (Cal. Ct. App. 2001), the court held that the one-action rule in CCCP § 726(a) did not apply to a sold-out junior lienholder. But again in a footnote, the Woods court acknowledged that CCCP § 580b would be applicable if Woods were a purchase money mortgage case:

> Nor is section 580b applicable here. It bars any deficiency judgment after foreclosure where the debt is secured by a purchase money mortgage, which is not at issue here.

Id. at 1226 n.5.

In Bank of Am. Nat'l Tr. & Sav. Ass'n v. Graves, 51 Cal. App.4th 607 (Cal. Ct. App. 1996), the court examined the claim of a creditor who offered a borrower a line of credit secured by a second trust deed on the property. The money was not used to purchase the property. Id. at 610. The court explicitly ruled that the debt in question was the "underlying nonpurchase money note." Id. at 617 (emphasis added).

The parties also disagree whether, for purposes of CCCP § 580b, a purchase money loan loses that status after a foreclosure. Clearly, it does not. DMC Inc. v. Downey Sav. & Loan Assn., 99 Cal. App.4th 190, 196 (Cal. Ct. App. 2002) ("The

-21-

facts and circumstances that exist at the time the debt is created determine the character of the obligation as a purchase-money mortgage."). In the final analysis, Heritage has not provided us with any acceptable authority for its argument that collection of Montano's debt is not barred by the antideficiency statute, CCCP § 580b.

Of course, the gravamen of this appeal is Heritage's contention that CCCP § 726(f), preserving a lender's right to pursue a borrower for damages if fraud was employed to induce the loan, constitutes an exception to the antideficiency statutes, and allows it to enforce its claim against Montano. We agree that, fairly read, CCCP § 726(f) creates an exception to the general rule prohibiting deficiency actions under CCCP § 726(b) and makes § 580b applicable to purchase money loans. In other words, when a loan originator makes a loan secured by a mortgage or deed of trust on real estate based upon the fraudulent[12] conduct of the borrower to induce the lender to make the loan, the lender may sue the borrower to recover its damages. But there is an exception to this exception, CCCP § 726(g).

The bankruptcy court concluded that, consistent with CCCP § 726(g), this "was owner-occupied property and I'm also concluding that the amount of the debt falls within the prohibition [of CCCP § 726(g)]. It's $89,000 some-odd worth of

---

[12] CCCP § 726(f) internally references Cal. Civ. Code § 1572 for its definition of fraud: "Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true[.]"

-22-

debt." Hr'g Tr. 107:19–21, September 5, 2012. In particular, the court found, based upon the undisputed facts in the summary judgment record the parties had submitted, that Montano had occupied the property:

> THE COURT: I would be inclined to find no triable issue with respect to occupancy. And I think it — what I'm looking at is occupancy on the day the loan is made. That's the way I'm reading [CCCP §] 726. Assuming it applies at all.
>
> HERITAGE COUNSEL: Well, there is additional information that we do have that hasn't been presented . . . that defendant did not actually reside in the property.
>
> THE COURT: Well, you relied on the deposition, right?
>
> HERITAGE COUNSEL: Yes, that was part of the evidence. There's been more . . .
>
> THE COURT: What was . . . the rest of it?
>
> HERITAGE COUNSEL: There's been more that's come to light. We did a further investigation.
>
> THE COURT: Well, is that before me today?
>
> HERITAGE COUNSEL: No.
>
> THE COURT: Okay.
>
> HERITAGE COUNSEL: I would like to make the record right now.
>
> THE COURT: Well, let's see if they're okay with that. Ms. Santiago [addressing MONTANO COUNSEL], we're about to get a supplemental —
>
> MONTANO COUNSEL: No, your Honor.
>
> THE COURT: All right. Okay. . . . I'm going to hold you to the record I have today.

Hr'g Tr. 66:22–67:23, April 19, 2012.

We agree with the bankruptcy court's conclusion in this regard. The only evidence before the bankruptcy court on occupancy was the deposition of Montano, in which he testified that he occupied the Property from the day of the loan approvals.

-23-

That there may have been other evidence available to Heritage that had not been submitted is no basis to deny Montano's motion for summary judgment.

The bankruptcy court's other important conclusion was that the amount of the loan to Montano that Heritage sought to enforce, $89,000, fell within the dollar limitations in § 726(g):

> I'm aware of the argument that perhaps the Legislature meant something else in terms of what the aggregate debt should be, but that's not what the statute says. It's something that could have been expressed as such and easily, frankly, could have been corrected thereafter, but it hasn't been. So I'm dealing with the statute as I believe it to be.

Hr'g Tr. 107:23—108:3.

We also agree with the bankruptcy court that, regarding the $150,000 cap, § 726(g) is plain on its face. Under the plain meaning rule, a court must assume that when passing a statute, the Legislature is aware of existing related laws. <u>Vieira Enters., Inc. v. City of E. Palo Alto</u>, 208 Cal. App.4th 584, 604 (Cal. Ct. App. 2012). While CCCP § 726 has been amended four times since its enactment in 1987, neither the amount, nor method of calculating the cap, was ever amended. To the extent Heritage argues that policy considerations mandate that the bankruptcy court should have adjusted the cap to aggregate loans made to a borrower by one lender in applying § 726(g), it asks too much. It is for the Legislature, not the courts, to amend statutes for policy considerations. <u>Cassell v. Super. Ct.</u>, 244 P.3d 1080, 1094 (Cal. 2011).

Heritage offers another reason why its fraud action against Montano is not barred by § 726(g). It asserts, with no citation to authority or reasoned argument, that CCCP § 726(g) "merely

-24-

limits the ability of loan originators to recover exemplary damages provided for in subdivision (f)." This argument lacks merit. Of course, CCCP § 726(g) makes no reference to punitive damages or, indeed, to any kind of damages; by its terms it bars any application of CCCP § 726(f) where the loan meets two requirements: where an owner/borrower occupies the property, and the loan amount is less than $150,000. Heritage's argument that the California legislature's sole concern in adopting § 726(f) was to limit awards of punitive damages is speculation. In any case, by the plain, unambiguous terms of CCCP § 726(g), CCCP § 726(f) does not apply to the facts in this appeal.[13]

Finally, Heritage repeatedly argues that the California legislature could not possibly have intended to "carve out" an exception that would endorse the fraudulent behavior of borrowers for smaller loans. Once again, Heritage's position rests on speculation about legislative intent. Moreover, we disagree with Heritage's suggestion that it would be absurd for the California Legislature to overlook potential borrower fraud regarding loans to owner-occupiers for less than $150,000 as a means of requiring lenders to exercise special diligence in making such loans. A

---

[13] In support of its speculation on the intentions of the California legislature, Heritage provided the Panel with almost 300 pages of the legislative materials concerning § 726(f) and (g). But these materials are almost entirely the reports of interest groups and lobbyists, all authored by non-legislators. None contain the statements of individual legislators or of the governor. The California courts have observed that committee reports and legislative counsel digests are not as useful in understanding the intent of the legislature as the language of the statute itself. Halbert's Lumber, Inc. v. Lucky Stores, Inc., 6 Cal. App.4th 1233, 1238 (Cal. Ct. App. 1992). We decline to rely upon this sort of information to create an ambiguity in a statute where none exists.

-25-

statute's plain meaning is absurd only if "it is so gross as to shock the general moral or common sense." Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450 (2002); United States v. Fontaine, 697 F.3d 221, 228 (3d Cir. 2012) ("An interpretation is absurd when it defies rationality or renders the statute nonsensical and superfluous.")(citations omitted). Here, that California would bestow protection against personal liability for a certain class of borrowers for home loans of modest amounts under limited circumstances does not shock the general moral or common sense, nor does it defy rationality, nor is it nonsensical and superfluous.

We conclude that the bankruptcy court did not err in granting Montano's motion for summary judgment against Heritage because, operating together, CCCP §§ 726 and 580b barred enforcement of Heritage's claim against Montano.

**II.**

**The bankruptcy court did not abuse its discretion in reconsidering its prior order and awarding attorneys fees and costs to Montano under § 523(d).**

**A.    The bankruptcy court did not abuse its discretion in granting Montano's motion for reconsideration.**

In their briefs, Heritage and Montano both suggest that Montano's motion for reconsideration was founded upon the provisions of Rule 9024, which incorporates Civil Rule 60(b)(1). We disagree.  Because Montano's motion for reconsideration was filed within fourteen days after entry of the Summary Judgment Order, the motion should be treated as one to alter or amend the Summary Judgment Order under Rule 9023, which incorporates Civil Rule 59(e).  Fadel v. DCB United LLC (In re Fadel), 492 B.R. 1, 18

-26-

(9th Cir. BAP 2013)(citing Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp., 248 F.3d 892, 898-99 (9th Cir. 2001)). The standard for granting relief under that rule requires the movant to show (a) newly discovered evidence, (b) the court committed clear error or made an initial decision that was manifestly unjust, or (c) an intervening change in controlling law. Duarte v. Bardales, 526 F.3d 563, 567 (9th Cir. 2008).

To the extent that Montano sought relief in the bankruptcy court under the wrong Rule, it was harmless error. In its motion, Montano argued that the bankruptcy court made an error of law. Under both Civil Rules 59(e) and 60(b)(1), reconsideration of an order is appropriate to correct a perceived error of law by the trial court.[14] In re Fadel, 492 B.R at 18 (Rule 60(b)(1)); see also Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2004) (applying 59(e) to correct a legal error by the court).

The legal mistake made by the bankruptcy court in originally denying Montano's request for attorneys fees is evidenced in its colloquy with Montano's counsel at the summary judgment hearing reminding the court that "[Montano] had moved for fees under [§] 523(d) and that the debt remains discharged, it was a consumer

---

[14] We discount Heritage's argument that in this context reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and the conservation of judicial resources . . .", citing Carroll v. Naktani, 342 F.3d 934, 945 (9th Cir. 2000). The Carroll court was quoting a treatise on general principles applied to Civil Rules 59(e) and 60. 12 MOORE'S FEDERAL PRACTICE § 59.30[4] (3d. ed. 2000). Immediately following the quotation from Moore's, however, the Carroll court continued with the comment, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court . . . committed clear error[.]" The Carroll court's opinion, therefore, would support the bankruptcy court's decision to correct its own clear error of law.

-27-

debt, and the complaint was brought without a reasonable basis in law." The court responded, "I'm denying that. I think those are close questions. I'm denying that." Hr'g Tr. 109:4-9. As Heritage is well aware, this Panel has held that:

> To support a request for attorneys' fees under § 523(d), a debtor initially needs to prove: (1) that the creditor sought to except a debt from discharge under § 523(a), (2) that the subject debt was a consumer debt, and (3) that the subject debt ultimately was discharged. Stine v. Flynn (In re Stine), 254 B.R. 244, 249 (9th Cir. BAP 2000), [aff'd 19 Fed. Appx. 626 (9th Cir. 2001)]. "Once the debtor establishes these elements, the burden shifts to the creditor to prove that its actions were substantially justified." Id.

Heritage Pac. Fin. LLC v. Machuca (In re Machuca), 483 B.R. 726, 734 (9th Cir. BAP 2012). Here, the bankruptcy court erred when it declined to consider Montano's § 523(d) request for an award of attorneys fees and costs, after Montano made a prima facie showing to support it, and without requiring Heritage to satisfy its burden to demonstrate prosecution of the action against Montano was substantially justified. The court appropriately acknowledged this when it stated:

> I think that the right analysis for [§ 523(d)] is for me to go back and review the factors and what it is you [Heritage] would have to prove and see if there were facts and law on your side, even though I did not reach them in disposing of the summary judgment motion. I think once I have a request under [§ 523(d)], that's what I am supposed to do, and frankly is what I didn't do at the end of the hearing. . . . But I'm convinced that the right answer is, I have to go back for [§ 523(d)] purposes and look at the broad spectrum.

Hr'g Tr. 41:2-12, September 5, 2012.

Simply put, a trial court's concession that it erred in an earlier order requires that court to set aside the order and reconsider the parties' arguments. Duarte, 526 F.3d at 567

-28-

(holding that once a court "acknowledged that the basis underlying its original judgment was wrong, it was error not to set aside the judgment."). The bankruptcy court did not abuse its discretion in reconsidering an order that it conceded was entered in error.[15]

**B. The bankruptcy court did not abuse its discretion in granting Montano's request for attorney's fees and costs under § 523(d).**

Section 523(d) provides that:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

Under § 523(d)'s shifting burden of proof, a debtor must establish three elements: (1) that the creditor sought to except a debt from discharge under § 523(a), (2) that the subject debt was a consumer debt, and (3) that the subject debt ultimately was discharged. In re Stine, 254 B.R. at 249 (affirmed by the Ninth Circuit at 19 Fed. Appx. 626). It is not disputed that all three of these elements were shown by Montano. The burden of proof then shifted to Heritage to prove that its actions were "substantially

---

[15] Of course, Civil Rules 59 and 60 are not the only tools available to a trial court to reconsider its orders. In particular, bankruptcy courts "as courts of equity [have the power] to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders." Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.), 503 F.3d 933, 941 (9th Cir. 2007). While the bankruptcy court acted properly here under Civil Rule 59(e), it was also within its discretionary authority to reconsider its order where, in light of Montano's prompt request, no intervening rights arose in reliance on the original order.

-29-

justified." In re Machuca, 483 B.R. at 734.[16]

The Panel has adopted the "substantial justification" standard employed by courts in weighing requests for fee awards under the Equal Access to Justice Act. In re Machuca, 483 B.R. at 733; In re Carolan, 204 B.R. at 987. As explained in Pierce v. Underwood, 487 U.S. 552, 558 (1987), a creditor must show that its claim had a reasonable basis both in law and in fact. In re Carolan, 204 B.R. at 987. Here, the bankruptcy court held that Heritage comes up short in that it did not show that WMC actually relied upon the written representations of Montano at the time it approved his loans, a critical element to establish a claim for relief under § 523(a)(2)(B).

To aid it in its review of Montano's § 523(d) motion, at the hearing on August 1, 2012, the bankruptcy court instructed the parties to prepare supplemental briefing discussing the case law on § 523(d) and discussing "what did people know and when did they know it." Hr'g Tr. 17:1-2, August 1, 2012. At the hearing on September 5, 2012, the court heard argument from counsel for Heritage and Montano detailing the history of the dispute between the parties, the course of the adversary proceeding, and Heritage's position at each stage of the litigation regarding its assertion, first made in its adversary complaint, that Montano provided fraudulent statements in the loan application on which WMC had relied such that Montano's debt, now owed to Heritage, should be excepted from discharge pursuant to § 523(a)(2)(B).

[16] Section 523(d) also allows a creditor to show "special circumstances" that would make an award unjust, even if the creditor could not prove substantial justification. Heritage has not pled any special circumstances in this appeal.

-30-

Hr'g Tr. 16–30, September 5, 2012.

Recall, under § 523(a)(2)(B)(iii), a creditor must prove that the creditor "reasonably relied" on any alleged false written financial information submitted by the debtor. Reviewing the supplemental briefing and arguments of counsel made at the hearing on September 5, the bankruptcy court expressed doubt concerning its ability, without a trial and attending credibility determinations, to decide whether Heritage could show that Montano made knowingly false statements in the loan application with the intent to deceive WMC. Hr'g Tr. 42:4-8. However, the bankruptcy court determined that, as a matter of law, Heritage had not shown that WMC relied on Montano's written statements about his financial condition. Hr'g Tr. 45:7-10, September 5, 2012. In particular, the bankruptcy court concluded that before Heritage could demonstrate that WMC reasonably relied on Montano's allegedly false written statements, it must first establish it had actually relied on those representations.[17] Because Heritage could not prove actual reliance by WMC, the court decided, it could not establish that its prosecution of the action against Montano was substantially justified for purposes of § 523(d). Heritage

---

[17] Heritage agreed with this approach, as reflected in the transcript:

THE COURT: Let me ask whether everybody agrees that whether we're talking about [§] 523(a)(2)(A) or (B), the reliance had to be actual. Right?

SANTIAGO(counsel for Montano): Yes.

THE COURT: Correct?

HUPE (counsel for Heritage): Yes.

Hr'g Tr. 30:19-24, September 5, 2012.

-31-

challenges the bankruptcy court's conclusion on appeal.

The Code confirms that the bankruptcy court's legal conclusion was correct:  § 523(a)(2)(B)(iii), by requiring a creditor to reasonably rely on a debtor's misrepresentations to qualify for an exception to discharge, by necessity implies that the creditor in fact rely on the subject false statements.  The case law is also clear that showing actual reliance is a prerequisite to establishing a creditor's reasonable reliance in this context.  Field v. Mans, 516 U.S. 59, 68 (1995) ("Section 523(a)(2)(B) expressly requires not only reasonable reliance but also reliance in itself. . . ."); AT&T Universal Card Servs. v. Mercer (In re Mercer), 246 F.3d 391, 413 (5th Cir. 2001) (the "actual reliance" standard requires that the creditor prove that it, in fact, relied on representations of the debtor);  Dollar Bank, F.S.B. v. Wagner (In re Wagner), 2009 Bankr. LEXIS 5540, at *7 (Bankr. W.D. Pa. 2009) ("Unless a creditor actually relies upon a false statement, the question whether a creditor's reliance on a false statement was reasonable does not arise. Reasonable reliance presupposes actual reliance.").

In making its decision, the bankruptcy court reminded Heritage of the comments made by the presiding bankruptcy judge at the hearing on Montano's motion to dismiss pointing out that, while the complaint would survive that motion, Heritage was likely facing formidable obstacles in proving that WMC actually relied on Montano's alleged falsities because WMC was now a defunct organization.  In response to these warnings, counsel for Heritage assured the bankruptcy judge that it would obtain competent evidence of reliance in discovery from Montano, from the mortgage

-32-

broker who allegedly created the false documents, and from former WMC agents, even though WMC was no longer in business. Hr'g Tr. 5:16-18, March 25, 2011. Heritage's assurances to the bankruptcy court were apparently in recognition that substantial justification for the pursuit of discharge litigation against consumer debtors requires a showing it is justified at all stages of the litigation. Gonzalez v. Free Speech Coalition, 408 F.3d 613, 620 (9th Cir. 2005) (holding that substantial justification cannot be determined from a litigant's ultimate position, but requires the court to examine its positions earlier in the litigation); In re Carolan, 204 B.R. at 988 (information obtained during the course of litigation that should dissuade creditor from continuing litigation shows lack of substantial justification); AT&T Universal Card Servs. v. Williams (In re Williams), 224 B.R. 523, 530 (2d Cir. BAP 1998)("We hold that the creditor must be substantially justified at all times through trial to be insulated from paying attorneys' fees under § 523(d).").

Despite its assurances, Heritage failed to provide the bankruptcy court competent evidence from knowledgeable people formerly at WMC, or at all, that WMC had actually relied on the contents of the URLA. Counsel for Heritage attempted to explain this deficiency by indicating that, while it intended to offer good proof, and was prepared to depose former officers of WMC, it had run out of time for discovery:

> [the parties] had agreed . . . to take the deposition of the person most knowledgeable with respect to WMC. A deposition subpoena was sent out. It was calendared; it was scheduled, and I had orally agreed with opposing counsel that this deposition would be moving forward even though it was after the discovery cutoff date, and after I served the deposition, [Montano] said no, we're

not going to do it.

Hr'g Tr. 36:3-10, September 5, 2012. Counsel further assured the bankruptcy court that, "My client has always been in contact with WMC regarding this loan, from day one." Hr'g Tr. 36:17-18, September 5, 2012. Concerning Heritage's reasons for not presenting direct evidence of actual reliance by WMC, the bankruptcy court observed that Heritage had not requested an extension of the discovery deadline to accommodate depositions. Hr'g Tr. 38:7-9, September 5, 2012.

As noted above, Heritage submitted only three declarations from witnesses to support its defense of the § 523(d) motion, all of which the bankruptcy court discounted because none, by direct knowledge of the witnesses, established whether WMC actually relied on the Montano URLA. Specifically, the court noted that the declaration of Mr. Gunter, an associate of Heritage's counsel, merely described the procedures he employed in investigating Montano. In the declaration of Mark G. Scheuerman, a proposed expert witness, he opined that WMC abided by the general standards of practices and customs in the industry in determining a borrower's creditworthiness at the time of the loans. The declarant offered no direct evidence that WMC followed these practices in dealing with respect to the Montano loans. And the declaration of Diane Taylor, prepared for an unrelated state court case, who identified herself as "assistant secretary" of WMC Mortgage, LLC, a successor to WMC, while stating that "WMC relied on the information provided by an applicant-borrower in his/her loan application through all stages of the underwriting process," also offered no insight into the details of the Montano

-34-

transaction. The bankruptcy court was careful to note that it was not making a credibility determination as to the statements made in any of the Heritage declarations, but simply ruling that the contents did not show that WMC had actually relied on the URLA. Hr'g Tr. 43:14-15, September 5, 2012. Even assuming the witness statements are all true and correct, we cannot fault the bankruptcy court for its unwillingness to accept Heritage's position that it was substantially justified in alleging that WMC actually relied on the income statements in the Montano URLA. Hr'g Tr. 42:20–43:13, September 5, 2012.

In the bankruptcy court, and now in this appeal, Heritage argues that WMC obviously changed its position after receiving the URLA, because it made the requested loans to Montano. It argues that, because it required a written loan application as a condition of lending to Montano, and because it thereafter extended credit to him, the bankruptcy court and this Panel must infer that WMC actually relied on those false statements. They cite to a venerable California case for a definition of "actual reliance":

> Actual reliance occurs when a misrepresentation is the immediate cause of a plaintiff's conduct which alters his legal relations and when absent such representation, he would not, in all reasonable probability, have entered into the contract or other transaction.

Engalla v. Permanente Med. Grp., Inc., 938 P.2d 903, 919 (Cal. 1997) (quoting Spinks v. Clark, 82 P. 45, 50 (Cal. 1905)).

We fear Heritage has taken this quotation out of context. Immediately following this passage in the decision, the court acknowledges a limitation on its prior statement:

> It is not . . . necessary that reliance upon the truth

-35-

of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing [the creditor's] conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.

Engalla, 938 P.2d at 919 (citing RESTATEMENT 2D TORTS § 538 com. e). Fairly read, as it applies to this case, the California court instructs that the bankruptcy court need not infer from the fact that a creditor has changed its position (i.e., approved and made a loan) that it actually relied on a fraudulent misrepresentation. To sustain such an inference, an inquiry must be made concerning the extent to which the creditor considered the misrepresentation a substantial factor in influencing its decision (i.e., actual reliance or reliance in fact).

Summarizing its conclusion, the bankruptcy court explained:

I am granting the motion for reconsideration to the extent that it put into issue the elements under [§] 523(a)(2)(B) that were set forth in the motion for summary judgment. Those directly included the reliance element. The predicate for any reliance element is that there was actual reliance by a person, and I'm finding that that simply was not demonstrated, and it's not a credibility issue. The declarations simply did not go to the subject in any meaningful way.

Hr'g Tr. 45:2-11, September 5, 2012. Since the bankruptcy court concluded that Heritage had not proven actual reliance, an essential element to prove for an exception to discharge under § 523(a)(2)(B), we agree that it follows that Heritage did not show that its position was substantially justified. In re Carolan, 204 B.R. at 987 (to prove that its actions are substantially justified, a creditor "must show that its challenge had a reasonable basis both in law and fact."). And where, as here, a debtor establishes that the creditor sought to except a debt from discharge under § 523(a)(2), that the subject debt was a

-36-

consumer debt, and that the subject debt ultimately was discharged, "the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified." § 523(d).[18]

Finally, at oral argument before the Panel, Heritage argued that it did not have a fair opportunity to present its case on actual reliance and substantial justification. Specifically, Heritage argues that, after the bankruptcy court granted the motion for reconsideration, it should have been given the opportunity for a separate hearing on the § 523(d) issue.

We do not think so. In addition, this position is inconsistent with Heritage's presentation at the hearing in the bankruptcy court on September 5, 2012, where Heritage's counsel stated that:

> I went back and looked at the language, and it says substantial justification in law and fact, so I believe that we've already satisfied the substantial justification in law based on the [§] 726 discussion and the ruling on the MSJ and the denial of [§] 523(d) on that ground alone. Now with respect to whether it's substantially justified in fact, I also believe that not only was that shown in the motion for summary judgment, even though it wasn't ruled on, but it's also been shown in . . . the evidence and facts that we've presented as well.

Hr'g Tr. 13:23–14:8, September 5, 2012. In short, Heritage

---

[18] In the bankruptcy court and this appeal, Heritage also argues that we should follow the conclusions reached by an earlier Panel in In re Tovar, case no. CC-11-1696 (9th Cir. BAP August 3, 2012), that we can infer reliance based on the fact that the creditor approved a loan based only on the loan documents. Heritage fails to understand that the holding in Tovar concerned reasonable reliance and the question of actual reliance was never raised. Reasonable reliance is not actual reliance. Field v. Mans, 516 U.S. at 68.

-37-

represented to the bankruptcy court that it was satisfied that it had established substantial justification on the previous motions and the evidence and facts they presented.  We have examined the transcripts of the hearings of August 1 and September 5, 2012, where the reconsideration motion and § 523(d) matters were discussed, as well as the additional briefs submitted by Heritage, and do not find any indication that Heritage requested a further hearing, or the opportunity to present more evidence, on the questions of reliance and substantial justification.

To the extent that Heritage's concern reflects a due process issue, the record is clear that Heritage had adequate notice throughout the proceedings that, if it could not establish the facts needed for an exception to discharge, Montano would request an award of fees if Heritage's arguments were not substantially justified at all stages of the proceedings.  Indeed, the § 523(d) issues were raised by Montano's cross-claim, explicitly addressed in connection with the dismissal motion, and argued again in both the Montano summary judgment motion and reconsideration motion. Moreover, before it granted the reconsideration motion and determined that Montano was entitled to recover attorneys fees under § 523(d), the bankruptcy court went "the extra mile" and allowed Heritage to address these issues via supplemental briefing.

But most importantly, and to the extent that Heritage argues here for fair or equitable treatment, we remind it that very early in this case, it was advised by the bankruptcy court that proving reliance would be difficult.  At the hearing concerning the motion to dismiss months earlier, the bankruptcy judge's warnings to that

effect were loud and clear. In response, Heritage assured the bankruptcy court that it would obtain competent testimony from WMC and other proof that WMC relied on Montano's alleged false representations in approving the loans. As it turned out, and though it had ample time to do so, Heritage failed to provide adequate or, in fact, any evidence to support the reliance allegation.

We conclude that the bankruptcy court did not abuse its discretion in granting Montano's request for attorney's fees and costs under § 523(d).

### CONCLUSION

The orders of the bankruptcy court granting Montano summary judgment and awarding him attorneys fees and costs are AFFIRMED.